IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

```
───────────────────────────
                          :
BRIAN STEELE AND JUDIKAELLE :    HON. JEROME B. SIMANDLE
STEELE,                     :
                          :      Civil No. 09-4340 (JBS/JS)
          Plaintiffs,       :
                          :
     v.                     :         OPINION
                          :
ARAMARK CORPORATION, et al., :
                          :
          Defendants.       :
                          :
───────────────────────────
```

APPEARANCES:

Daniel B. Zonies, Esq.
1011 Evesham Road, Suite A
Voorhees, NJ 08043
     -and-
Gary David Ginsberg, Esq.
GINSBERG & O'CONNOR, P.C.
3000 Atrium Way, Suite 330
Mount Laurel, NJ 08054
     Attorneys for Plaintiffs Brian Steele and Judikaelle Steele

Eric Michael Gernant, Esq.
MCGIVNEY & KLUGER, PC
23 Vreeland Road, Suite 220
Florham Park, NJ 07932
     Attorney for Defendant Quad Graphics, Inc.

**SIMANDLE**, Chief Judge:

## I.  INTRODUCTION

     This action arises from Plaintiff Brian Steele's
("Plaintiff") alleged exposure to toluene while transporting
print shop towels from Defendant Quad Graphics ("Quad" or
"Defendant") to a laundering facility.  This matter is currently
before the Court on two motions for reconsideration of this
court's March 29, 2012 Opinion and Order.  In that opinion, the

court held that the Plaintiff could not base his negligence claim against Quad by arguing that free liquid toluene was present in the drums of print shop towels being transported because the Plaintiff presented no evidence to support this allegation. However, the court allowed Plaintiff to proceed with his negligence claim against Quad based on Quad's failure to properly seal the drums with the print shop towels prior to transport.  In addition, the court precluded testimony of all of Plaintiff's experts with the exception of one of Plaintiff's medical experts and the court struck Plaintiff's affidavit pursuant to Fed. R. Civ. P. 37.

Plaintiff Brian Steele's motion for reconsideration is limited to the holding which bars Plaintiff from proceeding with its theory of negligence against Quad Graphics under the West Virginia One Drop Rule, specifically Plaintiff's claim that free liquid toluene was present in the drums Plaintiff transported. [Docket Item 95.]  Defendant Quad Graphics motion for reconsideration is also limited in scope and argues that the court erred in allowing Plaintiff to proceed with his negligence claim against Quad for failing to properly seal the drums with the print shop towels prior to transport.  [Docket Item 97.] Both parties argue, for different reasons, the court misinterpreted the West Virginia Shop Towel Policy in analyzing whether summary judgment was appropriate as to Plaintiff's

negligence claim.

## II.   BACKGROUND

### A. Statement of the Facts

The procedural history and underlying facts of this case are described in detail in the Court's March 29, 2012 opinion, see Steele v. Aramark, Civ. No. 09-4340, 2012 WL 1067879, 2012 U.S. Dist. LEXIS 43429 (D.N.J. March 29, 2012), and are reviewed herein only to the extent necessary to serve as a context for the motions for reconsideration before the court.

The instant action arises out of injuries suffered by Plaintiff Brian Steele ("Plaintiff" or "Steele") while working as a substitute truck driver for Defendant Aramark Uniform & Career Apparel.  Defendant Aramark is a corporation engaged in the business of leasing, supplying, delivering, cleaning and transporting of business and industrial uniforms and other cloth products to and from businesses and other organizations. Defendant Quad is a printing company and uses Aramark's services to launder its print shop towels.  During his time as a substitute truck driver, Plaintiff Steele transported used print shop towels from Quad's facility in West Virginia to Aramark's facility in New Jersey to be laundered.

Between 2007 and 2009, Steele would occasionally drive the route to Quad Graphics in Martinsburg, West Virginia when the

3

regular route driver was unavailable.  Steele operated the Quad
Graphics route on a normal basis (two times per week) for five
months, from April 1, 2007 until August 31, 2007.

As part of Steele's route responsibilities for Quad
Graphics, Steele maintains that he retrieved the print towels,
which he alleges were soaked in chemicals, including toluene, in
55-gallon drums.  On each trip, Steele would spend four to five
hours in the Quad facility wherein he would unload the clean
print towels and collect the toluene soaked towels by emptying
drums that were only partially full into others until he had full
drums to take back to Aramark.  The drums were then loaded into
the back of his delivery truck which had open airflow between the
storage compartment and the cabin.

Steele alleges that the lids to the drums were defective and
could not be properly sealed which resulted in them fitting
loosely on the top.  The drums that transported the print towels
from Quad's facilities to Aramark were provided by Aramark.  In
order to keep the lids attached to the drum, Quad employees
provided Plaintiff with duct tape and Plaintiff would then duct
tape the lids to the drums.  As a result of the loose fitting
lids, Steele testified that during his three hour drive from the
Quad facility in West Virginia to the Aramark facility in New
Jersey, he smelled a strong chemical odor and experienced
headaches and lightheadedness.

4

In August 2007, Plaintiff Steele was diagnosed with Focal and Segmented Glomerulonephritis ("FSGS") which has developed into End Stage Renal Disease requiring dialysis treatment.

Two years later, in July of 2009, Steele received a pamphlet from Aramark called "What's the Big Deal about Print Towels:  The Do's and Don'ts of Print Towel Transport and Processing."  This document explained Aramark's policy for handling solvent soaked print towels and informed employees of the danger of exposure to solvents.  The document also explains how print towels should be transported in "sealed and covered" containers.  Prior to receiving this pamphlet in July 2009, Steele did not receive any training on how to transport print towels safely or about the dangers of handling solvents.

### B. Procedural History and the Court's March 29, 2012 Opinion

The Plaintiff then filed the instant action in state court and the action was subsequently removed on the basis of diversity jurisdiction.  [Docket Item 1.]  In Count I of the complaint, Steele alleges that Aramark and Quad acted intentionally, willfully, wantonly, and/or with callous indifference by not warning Steele or employing reasonable safety measures to protect Steele from exposure to hazardous chemicals endemic to his job. The second count alleges Aramark and Quad were negligent in failing to employ reasonable safety measures, and/or to apply industry standards of safety, in protecting plaintiff from

exposure to hazardous chemicals endemic to his job.  Count III alleges the defendants conduct was outrageous and shocking to the conscience whereby the Plaintiff demands punitive damages.  Count IV is a loss of consortium claim brought by Steele's wife, Judikaelle Steele.  [Docket Item 1-1.]

The Defendants Quad and Aramark filed motions for summary judgment and to bar Plaintiff's experts as well as a motion to bar Plaintiff's late-filed affidavit wherein Plaintiff alleged for the first time that he observed free liquid toluene in the drums of print shop towels.  In its March 29, 2012 opinion, the court decided all the pending motions and largely granted summary judgment to the Defendants and dismissed most of Plaintiff's complaint.  [Docket Items 91 and 92.]

Specifically, the court granted the Defendants' motion to bar Plaintiff's July 19, 2011 affidavit as it was filed in violation of Fed. R. Civ. P. 26, the information withheld was significant and the prejudice and surprise to the Defendants were great.  The court also granted Aramark's motion for summary judgment as Plaintiff's claims against his employer, Aramark, were statutorily barred by the New Jersey's Worker Compensation Act, N.J.S.A. § 34:15-8.

The court granted in part and denied in part Quad's motion to bar Plaintiff's experts and motion for summary judgment.  The Plaintiff presented four experts in support of his case,

6

including two medical experts, an occupational health and safety expert and an industrial hygienist expert.  The court granted Quad's motion to bar three of Plaintiff's four experts and only permitted one of Plaintiff's medical experts to testify.  The court held Plaintiff's medical expert, Dr. Wedeen, would be permitted to testify that toluene exposure was a contributing cause of Plaintiff Steele's FSGS.  However, the court barred Plaintiff's remaining experts, including all of Plaintiff's workplace liability experts.

As a result, the court granted in part and denied in part Quad's motion for summary judgment.  The court dismissed Counts I and III of Plaintiff's complaint as there was no evidence that Quad acted intentionally in allegedly exposing Plaintiff to toluene vapors.  Therefore, the Plaintiff could not establish that any of the alleged conduct by Quad was outrageous or shocking to the conscience.

However, the court did not grant summary judgment as to Plaintiff's negligence claim.  Giving all favorable inferences to the Plaintiffs, the court concluded that there was a genuine issue of material fact as to whether Quad was negligent in failing to make sure the drums containing the print shop towels were properly sealed prior to transport.

The court began by noting that Plaintiff's negligence claim was based on two separate premises.  First, the Plaintiff argued

7

that Quad failed to comply with the one drop rule of the West
Virginia Shop Towel Policy by leaving free liquid toluene in the
drums.  The court stated that the only evidence of free liquid
toluene in the drums was Plaintiff Steele's affidavit which was
excluded by the court.  Therefore, no admissible evidence
supported this aspect of Plaintiff's negligence claim and summary
judgment was appropriate to dismiss this theory of liability.

Next, the Plaintiff argued that Quad failed to make sure
that the containers were tightly sealed prior to transport.  The
court found that under the West Virginia Shop Towel Policy, Quad,
as the generator of the print shop towels, had a duty to make
sure the drums were properly sealed to prevent the release of
fugitive air emissions.  The Plaintiff presented evidence that
Quad employees knew the lids to the drums did not seal and
provided Plaintiff with duct tape to attach the lids rather than
giving the Plaintiff functioning and sealable drums.  Further,
the court found that Plaintiff's medical expert provided enough
evidence to create a genuine issue of material fact as to whether
Plaintiff's exposure to toluene caused or contributed to causing
Plaintiff's FSGS.  Therefore, the court held that the Plaintiff's
negligence claim could survive summary judgment.

The instant motions for reconsideration of this court's
March 29, 2012 Opinion and Order seek only to reconsider the
court's conclusion as to Plaintiff's negligence claim.  The

Plaintiff urges the court to reconsider its dismissal of the portion of Plaintiff's negligence claim based on Quad's alleged violation of the one drop rule.  The Plaintiff argues that there is evidence that Quad violated the one drop rule notwithstanding the dismissal of Plaintiff's July 19, 2011 Affidavit.  Defendant Quad urges the court to dismiss the remaining portion of Plaintiff's negligence claim based on the improperly sealed drums.  Specifically, Quad argues that the West Virginia Shop Towel Policy should not be read as to impose a duty on Quad regarding the transport of print shop towels and that the dismissal of Plaintiff's liability experts prevents the Plaintiff from establishing causation.

## III.  STANDARD OF REVIEW

Local Civil Rule 7.1(i) governs the Court's review of these motions for reconsideration.  Rule 7.1(i) requires the moving party to set forth the factual matters or controlling legal authorities it believes the Court overlooked when rendering its initial decision.  L. Civ. R. 7.1(i).  Whether to grant a motion for reconsideration is a matter within the Court's discretion, but it should only be granted where such facts or legal authority were indeed presented but overlooked.  See DeLong v. Raymond Int'l Inc., 622 F.2d 1135, 1140 (3d Cir. 1980), overruled on other grounds by Croker v. Boeing Co., 662 F.2d 975 (3d Cir. 1981); see also Williams v. Sullivan, 818 F. Supp. 92,

93 (D.N.J. 1993).  To prevail on a motion for reconsideration, the movant must show:

> (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court . . . [rendered the judgment in question]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice.

Max's Seafood Café ex rel. Lou-Ann, Inc., v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999).  To prevail under the third prong, the movant must show that "dispositive factual matters or controlling decisions of law were brought to the court's attention but not considered."  P. Schoenfeld Asset Management LLC v. Cendant Corp., 161 F. Supp. 2d 349, 353 (D.N.J. 2001) (internal quotations and citations omitted).

The standard of review involved in a motion for reconsideration is high and relief is to be granted sparingly. United States v. Jones, 158 F.R.D. 309, 314 (D.N.J.1994); Maldonado v. Lucca, 636 F. Supp. 621, 629 (D.N.J. 1986).

**IV.  PLAINTIFF'S MOTION FOR RECONSIDERATION**

**A. The Parties' Arguments**

The Plaintiff argues that reconsideration is appropriate because the court overlooked and misinterpreted the West Virginia Shop Towel Policy in holding that the Plaintiff presented no evidence that Quad violated the "one drop rule."  The Plaintiff states that the one drop rules provides that shop towels are hazardous if all liquid from the shop towels is removed so that

10

one drop of liquid cannot be squeezed out.  Specifically, the
Plaintiff does not dispute the court's ruling striking the July
19, 2011 Affidavit; however, the Plaintiff argues his
interrogatory answer stating that he was exposed to "solvent
soaked" print towels is sufficient to create a genuine issue of
material fact.  The Plaintiff also relies on Defendant's expert,
Dr. James Stewart, who stated in his expert report that no free
solvents or "soaked" towels were found at Quad's facility.  The
Plaintiff argues the court should interpret the word "soaked" as
meaning a towel that produces a drop of liquid when squeezed.

The Defendant argues that Plaintiff's motion for
reconsideration seeks to reargue the same issues which were
already decided by the court.  The Defendant maintains the
Plaintiff has no evidence that there was ever free liquid toluene
in the drums.  The Defendant objects to the reference to Dr.
Stewart's expert report because Plaintiff will not be able to
call Dr. Stewart in their case in chief and his testimony cannot
serve as affirmative evidence to support Plaintiff's case.
Defendant argues Dr. Stewart will testify that there was never
free liquid toluene in the drums and therefore, Quad did not
violate the "one drop rule."  Further, the Defendants contend
that the Plaintiff, without any authority, assumes that Dr.
Stewart has the same definition of "soaked" as Mr. Steele.  The
Defendants maintain this is insufficient to raise a genuine issue

11

of material fact.

In addition, the Defendant maintains that Plaintiff's interrogatory answer alone is insufficient to raise a genuine issue of material fact.  The Defendants argue that the court fully addressed the significance of Plaintiff's interrogatory answers and held that it was insufficient to show that Quad had violated the "one drop rule."  Without any new evidence, the Defendant contends, Plaintiff's argument is nothing more than disagreeing with the court's decision and therefore is insufficient for reconsideration.

The Plaintiff filed a reply brief with leave of court. However, Plaintiff's reply brief puts forth additional facts[1] which were not presented or argued to the court in deciding the original motion for summary judgment on Plaintiff's negligence claim.  These additional facts were available to the Plaintiff

---

[1]  Plaintiff cites to the deposition testimony of four Quad employees and argues that this testimony shows a genuine issue of material fact exists as to how Quad handled used print shop towels.  Two of these depositions were not part of the record before the court on summary judgment.  The other two depositions were part of the Defendant's motion for summary judgment and were not raised or argued by the Plaintiff to support his negligence claim.  The belated nature of these arguments is further evidenced by the fact that the Plaintiff did not make any of these arguments in his initial moving papers for reconsideration but raised them for the first time in reply.  This is not only beyond the scope of reconsideration as these were not arguments presented to the court on the underlying motion, but this belated argument in a reply brief deprived the Defendant of any meaningful opportunity to respond.  Therefore, the court will not consider these additional depositions in deciding the instant motion.

during the original motion for summary judgment and were not
raised or argued at that time.  The Plaintiff provides no reason
for belatedly raising these facts now.  Because these new
arguments are raised for the first time in Plaintiff's reply
brief to his own motion for reconsideration, the court will not
consider these arguments as they are outside the scope of
reconsideration and the Plaintiff has offered no explanation for
his dilatory presentation.

**B. Analysis**

In this case, the Plaintiff does not argue that there has
been an intervening change in the law or that there is new
evidence which was unavailable when the court decided the
underlying motion for summary judgment.  Therefore, the only
remaining basis for reconsideration is the need to correct a
clear error of law or fact present in the court's previous
opinion.  To establish the need to correct a clear error of law
or fact, the  movant must show that "dispositive factual matters
or controlling decisions of law were brought to the court's
attention but not  considered." P. Schoenfeld Asset Management
LLC v. Cendant Corp., 161 F. Supp. 2d 349, 353 (D.N.J. 2001)
(internal  quotations and citations omitted).  Mere disagreement
with the Court's determination is not a basis for
reconsideration. United States v. Compaction Sys. Corp., 88 F.
Supp. 2d 339, 345 (D.N.J. 1999).

13

Here, Plaintiff's main argument is that the court overlooked the importance of Plaintiff's interrogatory answer that he handled "solvent soaked towels."  However, the court did not overlook Plaintiff's interrogatory answers in rendering its decision and indeed explored the significance of Plaintiff's use of the phrase "solvent soaked" towels in depth.  In particular, the court reasoned:

> This particular case involves Plaintiff Steele's exposure to toluene while transporting print towels and consequently, the state of the print towels and presence of liquid in the drums are significant, distinct factual inquiries.  The interrogatory answer that the towels were "solvent soaked" does not imply that there was also free liquid in the drums.  Here, the drums were transporting print towels which were soiled with toluene as the towels were used to clean printing presses.  Accordingly, it is not out of the ordinary that the towels themselves would be "soaked" with solvent as Plaintiff Steele's interrogatory answer suggests.

> This is wholly different from the allegation that free liquid toluene was in the drums.  This allegation implicates West Virginia print shop towel policies and significantly impacts the calculation of Plaintiff Steele's exposure to toluene.  Consequently, this factual allegation cannot be inferred from Plaintiff Steele's previous interrogatory answers and the Defendants cannot be deemed to be on notice of such a fact.  Therefore, Plaintiff Steele's previous interrogatory answer which stated the drums contained "solvent soaked print-shop towels" became materially incomplete when the Plaintiffs' submitted the letter to their adversaries that Plaintiff Steele was now alleging he saw toluene in the drums.  It is also noteworthy that Plaintiff chose the same phrase - "solvent soaked print-shop towels" - as appeared in the 2009 Aramark pamphlet about the handling of such cargo, which term denotes the proper and expected condition of these towels, in contrast to barrels containing free toluene.

[Docket Item 91] <u>Steele v. Aramark</u>, Civ. No. 09-4340, 2012 WL

1067879, 2012 U.S. Dist. LEXIS 43429, **13-15 (D.N.J. March 29, 2012).

Therefore, the court expressly concluded that the Plaintiff's interrogatory answer that he was exposed to "solvent soaked" towels did not give rise to an inference of free liquid toluene in the drums. Similarly, Plaintiff's interrogatory answer is not sufficient to show that Quad violated West Virginia's Shop Towel Policy. This policy provides:

> Shop towels that are recycled by laundry are not hazardous waste if:
>
> (a) They can meet the one drop rule, that is: The generator of the shop towels has removed, by physical or mechanical means, all liquid from the shop towel so that not more than one drop of liquid remains for removal (i.e., one more drop cannot be squeezed out of the towels).

(Pl.'s Ex. A.)

Mr. Steele's interrogatory answer describes the state of the print shop towels Mr. Steele was transporting. Specifically, these towels were print shop towels that had been soaked in toluene. This was the state the towels were expected to be in at the time of pick up for laundering. This is evidenced by the July 2009 pamphlet which was handed out to all Aramark employees providing safety guidelines for handling print shop towels. [Docket Item 74-1.] The pamphlet states:

> The term "Print Towel" has come to mean any industrial towel that **becomes soaked with solvent** during use. The most common customers that return **solvent-soaked towels** are printing operations that wipe ink off metal

15

rollers between print runs.

[Docket Item 74-1](emphasis added).

The Aramark pamphlet clearly defines a "print shop towel" as a "towel soaked with solvent during use." [Docket Item 74-1.] This clarifies Plaintiff's interrogatory answer as describing the state of the print shop towels. It cannot be inferred that because the towels were soaked in solvent during their use that there was free liquid solvent remaining on the rag when Plaintiff picked up the towels such that one drop could be removed when squeezed. Indeed, Plaintiff's interrogatory answer makes no allegation that he was exposed to any liquid, but instead was only exposed to fumes from these towels. Specifically, Plaintiff's interrogatory answer states:

> Plaintiff exposed on continuous basis to fumes from solvent soaked print-towels due to his job duties that required him to collect and transport spent print-towels from Quad Graphics in West Virginia to Aramark in New Jersey.

[Docket Item 95-6 at ¶ 10.] Plaintiff alleges only that the fumes from the towels bothered him, not any excess liquid. This further fortifies the court's conclusion that the Plaintiff's use of the phrase "solvent soaked" is merely descriptive that the print shop towels were soiled or used and is not synonymous with free liquid remaining on the towels at the time of pick up.

Further, it is undisputed that Dr. Stewart defined the term "soaked towels" as towels from which he could not squeeze any

16

liquid.  However, it does not follow that Plaintiff's use of the term "solvent soaked towels" has the same definition that Dr. Stewart used in his expert report.  Plaintiff's interrogatory answers were submitted prior to Dr. Stewart's expert report, so it is logically impossible that Plaintiff adopted the same meaning of "soaked" as Dr. Stewart when Dr. Stewart had not yet defined the term and the Plaintiff has provided no evidence to support this argument.  Rather, it is more likely Plaintiff used the phrase "solvent soaked" because this was the phrase used to describe used print shop towels in the 2009 Aramark pamphlet, as explained above.

Therefore, the court will deny Plaintiff's motion for reconsideration.  The Plaintiff was unable to show that the court had overlooked the significance of his interrogatory answers in deciding the underlying summary judgment motion.  Even when the court did reexamine Plaintiff's interrogatory answers, the court cannot find that the Plaintiff's use of the term "solvent soaked towels" is synonymous with Defendant violating the "one drop rule."  At most, this phrase describes the state of the towels as soiled or used, not containing free liquid toluene.  Further, Plaintiff's interrogatory answers specifically reference exposure to fumes and do not mention exposure to any liquid when handling the towels.

Accordingly, as the Plaintiff has failed to establish a

17

clear error of law or fact with the court's previous decision, Plaintiff's motion for reconsideration will be denied.

## V.   DEFENDANT QUAD GRAPHIC'S MOTION FOR RECONSIDERATION

### A. The Parties' Arguments

The Defendant also brings a motion for reconsideration and argues that the court misinterpreted the West Virginia Towel Shop Policy in imposing a duty on Quad to ensure the drums were properly sealed prior to transport.  In addition, Quad argues that the court erred in finding Quad owed a duty to the Plaintiff after he left Quad's premises.  Lastly, the Defendant argues that the court's exclusion of Plaintiff's liability experts prevents the Plaintiff from establishing causation which is required for his negligence claim.

The Plaintiff opposes Defendant's motion for reconsideration and argues the court was correct in its interpretation of the West Virginia Shop Towel Policy.  The Plaintiff maintains Quad was required to make sure the lids to the drums were properly sealed before transport and this duty continued after Plaintiff left Quad's premises.  In addition, the Plaintiff contends he does not need a liability expert to defeat summary judgment on his negligence claim.

The Defendant, with leave of court, filed a reply in further support of its motion for reconsideration.  The Defendant

18

emphasizes its argument that the Third Circuit requires the use of a liability expert to prove causation in chemical exposure cases.  The Defendant relies on Redland Soccer Club, Inc. v. Dep't of the Army of the U.S., 55 F.3d 827 (3d Cir. 1995) and Heller v. Shaw Industries, 167 F.3d 146 (3d Cir. 1999).  The Defendant maintains that testimony is need to quantify the exposure as either significant or beyond what would be expected in everyday life and without a liability expert, the Defendants argue the Plaintiff is unable to meet this requirement.  In addition, the Defendant contends that the West Virginia Shop Towel Policy does not impose a duty on Quad as the generator to ensure the drums were properly sealed prior to transport.

**B. Analysis**

The court finds that reconsideration is appropriate to consider Defendant Quad Graphic's arguments regarding whether the Plaintiff has presented sufficient proof of causation to sustain his negligence claim in light of the dismissal of his liability experts.

In order to establish a claim for negligence under New Jersey law, a plaintiff must prove: (1) duty of care; (2) a breach of that duty; (3) proximate causation; and (4) injury. Weinberg v. Dinger, 106 N.J. 469, 484 (1987).[2]  In a toxic tort

_____

[2] Defendant's citation to Redland Soccer Club, Inc. v. Dep't of the Army of the United States, 55 F.3d 827 (3d Cir. 1995) for the proposition that the Plaintiff must prove that Plaintiff was

case, a plaintiff must prove medical causation to satisfy the proximate cause element of the common law negligence claim. Specifically, medical causation "requires proof that the exposure was a substantial factor in causing or exacerbating the disease." Sholtis v. American Cyanamid Co., 238 N.J. Super. 8, 30-31 (N.J. App. Div. 1989); see also James v. Bessember Processing Co., Inc., 155 N.J. 279, 299 (1998).

The Third Circuit has held that a plaintiff must show that his exposure to a chemical was "at a greater level than the normal background level" to establish that the exposure caused his injury. Heller v. Shaw Industries, Inc., 167 F.3d 146, 159 (3d Cir. 1999)(citing In re Paoli R.R. Yard PCB Litig., 916 F.2d 829, 860 (3d cir. 1990)).

New Jersey courts have established a two-part test for establishing medical causation in occupational toxic tort cases. Specifically, a plaintiff may establish medical causation by demonstrating: (1) factual proof of the plaintiff's frequent,

---

significantly exposed to a proven hazardous substance through the negligent actions of the Defendant in order to sustain his claim is unpersuasive.  First, Redbank was interpreting a claim under the Federal Tort Claims Act and applied Pennsylvania common law. Second, the plaintiff in Redbank was suing for medical monitoring, which requires expert testimony regarding Plaintiff's increased risk of contracting a serious latent disease and that periodic monitoring and testing procedures would make early detection of the disease possible and beneficial.  Id. at 845. In this case, the Plaintiff has already contracted FSGS and is not seeking medical monitoring damages.  Therefore, the Defendant's reliance on Redbank is misplaced.

regular and proximate exposure to a harmful product; and (2) medical and/or scientific proof of a nexus between the exposure and the plaintiff's condition.  James, 155 N.J. at 304.  This analysis is typically applied in product liability cases where a plaintiff is exposed to multiple products of multiple defendants containing harmful chemicals over an extended period of time. Id. at 301.

New Jersey law does not per se require expert testimony to establish that a person's level of exposure to a chemical was greater than normal.  New Jersey only requires expert testimony to establish the medical nexus between the exposure and plaintiff's condition.  Specifically,

> If the evidence establishes that reasonable jurors could infer that sometime during their work histories . . . plaintiffs were exposed to [a toxic chemical or product] frequently and on a regular basis, while they were in close proximity to it (balancing these factors); and if competent evidence, usually supplied by expert proof, establishes a nexus between the exposure and plaintiff's condition, then that defendant's summary judgment motion must be denied.

Sholtis, 238 N.J. Super. at 31.

The New Jersey Supreme Court explained, "[s]ince proof of direct contact is almost always lacking . . . courts must rely upon circumstantial proof of sufficiently intense exposure to warrant liability."  James, 155 N.J. at 301-02.  In requiring proof of frequent, regular and close proximate contact with a harmful chemical or product, New Jersey courts have recognized

21

that an "[i]ndustry should not be saddled with such open-ended exposure based upon 'a casual or minimum contact.'" Sholtis, 238 N.J. Super. at 29 (citing Lohrmann v. Pittsburg Corning Corp., 782 F.3d 1156, 162 (4th Cir 1986)).

In this case, as discussed in the court's prior Opinion, the Plaintiff has demonstrated the second element of showing a nexus between the exposure and Plaintiff's FSGS through the testimony of Dr. Wedeen.  However, the court in its prior Opinion failed to address whether the Plaintiff had presented sufficient proof of intense exposure to toluene sufficient to survive summary judgment and therefore reconsideration is appropriate.

Since the testimony of Plaintiff's liability experts was deemed inadmissible, the only evidence of the level of Plaintiff's exposure is Plaintiff's own testimony.  As explained in the court's previous Opinion, the Plaintiff testified in his deposition that he regularly drove the route from Quad Graphics to Aramark from April 1, 2007 to August 1, 2007.  The regular route was approximately two trips per week and it took Plaintiff on average three hours to drive from Quad's facility to Aramark with the soiled print towels.  The Plaintiff was then diagnosed with FSGS in August 2007.  After August 2007, Plaintiff would occasionally drive the route to Quad Graphics when the regular route driver was unavailable.

This is insufficient under New Jersey law to prove the

22

proximate cause element necessary to sustain a toxic tort negligence claim.  This is not the type of intense exposure which satisfies the frequency and regularity requirement for medical causation.  Specifically, New Jersey courts have found the causation requirement satisfied where there was evidence of prolonged exposure over a period of years with regular, daily interaction with the harmful product or chemical.  See James, 155 N.J. at 287 (finding the frequency, regularity and proximity requirement satisfied where plaintiff was employed for twenty-six years and was exposed to a wide array of carcinogenic chemicals on a daily basis) and Sholtis, 238 N.J. Super. 14-16 (holding employees who were exposed to asbestos for over four decades satisfied the intense exposure requirement).

The Plaintiff in this case was exposed over a very short period of time, only five months, and this exposure was not on a daily basis.  Indeed, this exposure was approximately six hours a week as the Plaintiff only made two trips to the Quad facility and it took him approximately three hours to drive from Quad to Aramark.  This level of exposure is not sufficiently intense to warrant liability and instead suggests "a casual or minimum contact" at best.  Sholtis, 238 N.J. Super. at 29.

Further, the Plaintiff has no expert testimony quantifying the amount of toluene he was exposed to while driving the soiled print towels from the Quad facility to Aramark.  The Plaintiff

has presented no expert testimony regarding the amount of toluene fumes emitted into the truck.  Consequently, there is no quantifiable or scientific evidence demonstrating that the Plaintiff was exposed to toluene in excess of OSHA permissible exposure limits.

Given the infrequency of Plaintiff's exposure to toluene, it is not inferable from the circumstantial evidence that Plaintiff was exposed to a sufficiently intense amount of toluene.  As a result, a lay jury could not find, in the absence of expert testimony, that Plaintiff was exposed to toluene in excess of the permissible limit.  See Wilburn v. Maritrans GP, 139 F.3d 350, 360 (3rd Cir. 1998)(finding that expert testimony is necessary in a case where persons of common understanding could not comprehend the essential facts to demonstrate the cause of plaintiff's injuries); Jones v. Toyota Motor Sales, USA, Inc., 282 F. Supp. 2d 274, 276 (E.D. Pa. 2003)(holding that expert testimony is necessary for plaintiff's case when laypersons would lack the necessary knowledge and experience to render a just decision); and Torres v. Schripps, Inc., 342 N.J. Super. 419, 430 (App. Div. 2001)("expert testimony is needed where the factfinder would not be expected to have sufficient knowledge or experience and would have to speculate without the aid of expert testimony.")

Therefore, it is clear that the Plaintiff's evidence of exposure falls short of the requirements under New Jersey law to

sustain a negligence claim against Quad.  The Plaintiff has not satisfied his burden to show that his exposure to toluene while driving his truck route was sufficiently intense to warrant the imposition of liability and therefore, the Plaintiff cannot establish that his exposure to toluene was the proximate cause of his FSGS.  Accordingly, the court will reverse its previous decision and grant summary judgment to Quad and dismiss Plaintiff's negligence claim.

In addition, as Count IV of the complaint alleging loss of consortium by Plaintiff Judikaelle Steele is derivative of Plaintiff Steele's negligence claim, and Plaintiff's negligence claim is dismissed, summary judgment is also appropriate to dismiss Count IV.

**VI.  CONCLUSION**

For the reasons discussed above, the court will deny Plaintiff's motion for reconsideration [Docket Item 95] because the Plaintiff was unable to show that the court had overlooked the significance of his interrogatory answers in deciding the underlying summary judgment motion.

However, the court will grant the Defendant's motion for reconsideration [Docket Item 97] as the court overlooked the standard under New Jersey law to prove proximate causation in a toxic tort negligence case.  Upon reconsideration, the court

determines that Dr. Wedeen's testimony establishing a nexus between exposure to toluene and Plaintiff's FSGS alone is insufficient to establish proximate cause.  The Plaintiff must also present evidence that his exposure to toluene was so intense as to warrant the imposition of liability.  After reviewing the record, the court finds the Plaintiff has failed to establish that he was exposed to toluene on a frequent and regular basis and therefore cannot satisfy the requirement of proximate cause. Accordingly, the court will reverse its denial of summary judgment and dismiss Plaintiffs' remaining negligence claim.

The accompanying Order will be entered.


**September 14, 2012**                          **s/ Jerome B. Simandle**
Date                                            JEROME B. SIMANDLE
                                                Chief U.S. District Judge